UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GERMAINE BLAINE; CYNTHIA
BRYANT; JUAN CASTRO; ASHISH
DALAL; FIRAS MUWALLA;
BRENDAN PRENDERGAST;
RICHARD SPRAWLS,

        Plaintiffs,

v.                                                   Case No. 6:18-cv-487-Orl-37DCI

NORTH BREVARD COUNTY
HOSPITAL DISTRICT,

        Defendant.

## ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunctive Relief. (Doc. 67 ("**Motion**").) Defendant North Brevard County Hospital District ("**PMC**") responded (Doc. 77), and the Court heard argument on December 18, 2018 (Docs. 90, 91 ("**Hearing**")). On review, the Motion is due to be denied.

### I.    BACKGROUND

This case concerns the rescission of medical privileges for Plaintiffs, a group of oncologists, to practice at PMC, a public hospital located in Brevard County, Florida. (Docs. 1, 81.) Plaintiffs initiated this action bringing two claims seeking injunctive relief and damages against PMC based on: (1) violations of Plaintiffs' procedural due process under 42 U.S.C. § 1983; and (2) breach of PMC's Bylaws. (Doc. 1, ¶¶ 46–67.) Along with Plaintiffs' Complaint, Plaintiffs moved for a preliminary injunction. (Doc. 5 ("**First PI**

-1-

Motion").) After full briefing and a hearing (Docs. 5, 6, 11–13, 32, 33, 35, 39, 40), the Court granted in part Plaintiffs' First PI Motion on the procedural due process claim (Doc. 42 ("**PI Order**")).[1] Specifically, the Court found that under PMC's Bylaws, Plaintiffs were entitled to a hearing before their applications for reappointment of medical privileges could be denied. (*Id.* at 10–15.) Therefore, the Court ordered PMC to restore Plaintiffs' privileges pending an impartial hearing on Plaintiffs' reappointment applications in conformity with the Bylaws. (*Id.* at 19–20.)

PMC complied. (*See* Doc. 67, pp. 1–2.) PMC restored Plaintiffs medical privileges and set a hearing on Plaintiffs' reappointment applications before an Ad Hoc Committee of PMC's medical staff. (Doc. 81, ¶¶ 36–37.) The hearing took place on July 19 and 20, 2018. (*Id.* ¶ 37; *see also* Docs. 66-4, 66-5.) In line with the Bylaws, the parties were represented by counsel and presented witness testimony and evidence. (Doc. 81-1, Ex. E.) On July 30, 2018, the Committee issued its written findings and recommendation that Plaintiffs' reappointment applications be denied. (*Id.*) In short, the Committee found that: (1) Plaintiffs refused to comply with repeated requests from PMC for patient data; (2) under PMC's Bylaws, clinical competency is not the sole basis for denying reappointment applications; (3) Plaintiffs' failure to provide the requested data hinders the delivery of quality patient care at PMC; and (4) denying Plaintiffs' reappointment applications based on Plaintiffs' refusal to provide, or cause to be provided, the patient data is appropriate under the Bylaws. (*Id.* at 4.)

---

[1] The Court assumes the reader's familiarity with the PI Order.

As the Bylaws permit (Doc. 81-1, Ex. A § 9.2-4(E)(4)), Plaintiffs submitted exceptions to the Committee's Ruling and appealed the decision to PMC's CEO George Miktarian, Jr. (Doc. 81-1, Ex. F.) Mr. Miktarian denied Plaintiffs' exceptions (Doc. 81-1, Ex. G.) and issued a written disposition affirming the Committee's decision to deny Plaintiffs' reappointment applications based on their failure to provide the requested patient data (Doc. 81-1, Ex. H ("**Disposition**")). Plaintiffs sought appeal from PMC's Board of Directors—it upheld Mr. Miktarian's Disposition. (Doc. 81-1, Ex. I.) Now, Plaintiffs no longer hold medical staff privileges at PMC. (*Id.*; *see also* Doc. 81, ¶ 50.)

Unsatisfied with the denial of their reappointment applications following this process, Plaintiffs moved for another preliminary injunction. (Doc. 67.) Plaintiffs contend injunctive relief is warranted for each claim they bring. (*Id.* at 15–22.) First, for the Breach of Bylaws claim, Plaintiffs claim that PMC violated the Bylaws by not exclusively considering medical competency and quality of patient care as grounds for reappointment. (*Id.* at 15–19.) Second, Plaintiffs maintain their procedural due process claim still supports a preliminary injunction—no longer because their reappointment applications were denied without a hearing, but instead because some evidence Plaintiffs sought to submit was excluded at the hearing. (*Id.* at 19–20.) Last, Plaintiffs added a substantive due process claim (*see* Docs. 62, 66, 80, 81) and claim that PMC's decision to deny Plaintiffs' reappointment applications based on their failure to provide patient data amounts to such a violation because it imposes an arbitrary, unreasonable, and capricious standard. (*Id.* 20–22.) Following briefing and the Hearing (Docs. 77, 90, 91), the matter is ripe.

## II. LEGAL STANDARD

A district court may issue a preliminary injunction when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (describing traditional elements of a stay in removal proceedings). Preliminary injunctions are "drastic" and "extraordinary" remedies, not to be issued unless the movant has "clearly established" the burden of persuasion on each element. *Four Seasons*, 320 F.3d at 1210 (citation omitted). They are the exception, not the rule. *Id.*

## III. DISCUSSION

As the Court previously found Plaintiffs satisfied elements two through four (Doc. 42, pp. 16–19), Plaintiffs focus their legal argument on the first factor—whether the record as it stands supports a substantial likelihood of success on the merits of their three claims. (Doc. 67, pp. 15–22.) Plaintiffs submit that the record "remains unchanged" since the PI Order but "recent developments" strengthen their claims to injunctive relief, so seek a restoration of their privileges pending trial. (*Id.* at 2.) In turn, PMC points out that it has complied with the PI Order and provided Plaintiffs full procedural due process for their reappointment applications, so additional injunctive relief on that claim is not supported. (Doc. 77, pp. 1–4.) And because the decision to deny Plaintiffs' applications was based on

appropriate criteria under applicable law and the Bylaws, PMC contends that Plaintiffs fail to establish a substantial likelihood of success on the merits for their breach of contract and substantive due process claims. (*Id.* at 5–11.) The Court agrees with PMC.

First, the Court finds that Plaintiffs haven't established a substantial likelihood of success on the merits of their breach of contract claim. To meet this, Plaintiffs claim that the Bylaws circumscribe the basis for reappointing medical privileges such that nonclinical criteria cannot be considered when a physician seeks reappointment. (Doc. 67, pp. 3–9.) Because PMC based its denial decision on Plaintiffs' refusal to comply with the data requests—which Plaintiffs categorize as nonclinical criteria—Plaintiffs claim that PMC breached its Bylaws. (*Id.* at 7–9.) Yet on review of the Bylaws and applicable law, the Court agrees with PMC—clinical competence is not the only proper criteria for privileges decisions.

Under the Bylaws, PMC staff members are required to "[a]bide by the medical staff bylaws and by all other lawful standards, policies and rules of the Hospital," (Doc. 81-1, Ex. A § 3.3(B)) which includes the responsibility to "[a]ccount to the Board for the quality and efficiency of patient care through regular reports" (*Id.* § 2.2(D)). Staff members seeking reappointment are evaluated "based upon such member's demonstrated professional ability and clinical judgment in the treatment of his patients, professional ethics, *discharge of staff obligations*, *compliance with these Bylaws*, and the Rules and Regulations, and good physical and mental health." (*Id.* § 6.4-4 (emphasis added) (criteria for recommendation from Credentials and Medical Ethics Committee)). So, clearly, the Bylaws allow issues outside the realm of clinical competence to be considered

when evaluating a staff member's reappointment application—and such is the case here.

The Ad Hoc Committee determined that "a staff member's lack of support for [PMC] quality initiatives is a ground for denial of reappointment" under the Bylaws. (Doc. 81-1, Ex. E, p. 2.) Because Plaintiffs' failure to turn over requested patient data fit this bill, the Ad Hoc Committee found that the Medical Executive Committee could rightfully recommend denial of Plaintiffs' reappointment applications under the Bylaws (*id.* at 4); and this decision could rightfully be upheld following a hearing before the Ad Hoc Committee, a review by the CEO, and ultimate disposition by the Board (*See* Docs. 81-1, Exs. G, H, I). And at this stage, the Court finds no fault in this course of action— rather, the Bylaws contemplate denial of reappointment on such grounds so long as the reappointment process is followed. (*See* Doc. 81-1, Ex. A §§ 6.3, 6.4; Article 9.) Accordingly, the Court is not persuaded by Plaintiffs' argument that PMC breached the Bylaws in deciding to deny their reappointment applications based on their failure to turn over patient data. Thus, Plaintiffs have not established a substantial likelihood of success on the merits to warrant a preliminary injunction on this claim.

The same goes for Plaintiffs' other claims. To show a substantial likelihood of success on the merits of their substantive due process claim, Plaintiffs need establish that PMC's decision to terminate their medical privileges was "arbitrary, capricious, and discriminatory." *Shawahy v. Harrison*, 875 F.2d 1529, 1533 (11th Cir. 1989). This is a high bar to reach; the Court cannot "substitute [its] judgment for that of the hospital's governing board or . . . reweigh the evidence regarding the renewal or termination of medical staff privileges." *Id.* Rather:

> [T]he court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere.

*Id.* PMC's decision here clears this bar. Each reviewing body at PMC found that Plaintiffs' failure to comply with PMC's request for patient data hindered the cancer program and the delivery of quality of patient care and could cause the loss of accreditation in the future. (Doc. 81-1, Ex. E, p. 4; Ex. H, pp. 2–12; Ex. I pp. 2–3.) Such grounds are "reasonably related to the operation of the hospital," "fairly administered," and relevant considerations for PMC. *See Shahawy*, 875 F.2d at 1533. As such, at this stage the Court cannot find that PMC's denial of Plaintiffs' reappointment constituted a violation of Plaintiffs' substantive due process rights. *Id.* Thus, Plaintiffs' request for injunctive relief for this claim fails.

So too for Plaintiffs' procedural due process claim. The landscape has changed remarkably since the PI Order for this claim—there, the Court ordered limited injunctive relief because Plaintiffs' reappointment applications had been denied without the process they were due. (*See* Doc. 42, pp. 11–16.) The PI Order guaranteed Plaintiffs would receive that process, in the form of a Bylaws-compliant hearing before a neutral decisionmaker where Plaintiffs were represented by counsel and could present evidence. (*Id.* at 12–16.) That hearing sought to determine whether PMC could deny Plaintiffs' reappointment applications based on their failure to turn over, or cause to be turned over, the requested patient data. (*Id.* at 19.) No change in outcome was guaranteed. (*See id.*) And now that

Plaintiffs have received such process—a "full panoply of due process protections"—the Court's role is limited. *See Shahawy*, 875 F.2d at 1533; *see also Woodbury v. McKinnon*, 447 F.2d 839, 844 (5th Cir. 1971).[2] The question becomes whether the type of hearing Plaintiffs received comports with the requirements of due process in this context. *Darlak v. Bobear*, 814 F.2d 1055, 1062 (5th Cir. 1987) (first citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); then citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)). Three factors are considered: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such an interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest. *Id.* (quoting *Mathews*, 424 U.S. at 334–35).

Plaintiffs focus on the second factor, claiming that PMC prevented them from introducing evidence of their medical competency and quality of patient care at the hearing, which led to an erroneous outcome. (Doc. 67, pp. 19–20.) But as PMC points out, this is because Plaintiffs' clinical competency was not in question—it was not why the Medical Executive Committee issued its adverse recommendation in the first place. (*See* Doc. 77, pp. 12–15; Doc. 42, pp. 4–5.) Instead, at issue was whether Plaintiffs' inability or refusal to turn over patient data was an appropriate basis to deny them reappointment. (Doc. 42, pp. 4–9, 14–16, 19.) So the Ad Hoc Committee focused on that question and admitted evidence accordingly. (Doc. 81-1, Ex. E; *see also* Docs. 66-4, 66-5.) This evidence

---

[2] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

included testimony from one Plaintiff, Dr. Dalal, who agreed that providing data and getting reaccredited is a component of delivery of quality of patient care at PMC. (Doc. 66-5, p. 109: 4–8.) Plaintiffs were also provided the opportunity to appeal the Ad Hoc Committee's decision, which they did. (Doc. 81-1, Ex. F.) They received additional process from that—a written ruling from the CEO and his Disposition. (Doc. 81-1, Exs. G, H.) Ultimately, after a full review of the record, the Board ruled in favor of denying Plaintiffs' privileges. (Doc. 81-1, Ex. I, p. 2.)

With all this, the Court simply cannot agree with Plaintiffs that the process afforded to them suffered risk of erroneous deprivation of their privileges such that they need additional or substitute procedures. *See Darlak*, 814 F.2d at 1062–63. Thus, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their procedural due process claim. The request for preliminary injunctive relief is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 67) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 4, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record